United States of America v. Robert Poandl, case not to, argument not to exceed 15 minutes per side. Ms. Berry, you may proceed for the appellant. Good morning, your honors. May it please the court, my name is Michelle Berry and I represent the appellant Robert Poandl. May I request three minutes for rebuttal? You may. Thank you. Your honors, there are seven assignments of error in this case, but they basically fall into two categories and that is problems with the evidence as that relates to the honor about jury instruction and the variance constructive amendment issue and prosecutorial misconduct in the closing argument. I'm going to go in reverse chronological order and start with the problems in the closing argument centering on the prosecutorial misconduct and improper argument in the closing. The law is very clear and simple on this matter. The jury is not permitted to consider factors other than the evidence, not sympathy for the victim, not fear of the defendant, not fear of potential future crimes in deciding the verdict. That's absolutely improper and that's what happened here. Just to summarize, the prosecutor here unequivocally urged the jury to consider fear of Robert Poandl, fear of hurting other children in the future, sympathy for David Harper. He did this by beating the jurors over the head with a trust and courage theme. Were there any objections made to these comments? At one point there was an objection in the section of the closing dealing with sympathy for David Harper and standing in his shoes. This was the only objection lodged and it was in the portion of the closing argument where the prosecutor was basically attempting to have the jury look over and explain away inconsistencies in the evidence due to the passage of time and due to the fact that 22 years had passed and that David Harper was 10 at the time. Defense counsel did object. Other than that, there were no objections lodged. What did the district judge say with respect to that objection? The judge did not issue an admonition. He did caution the prosecutor. He did say, look, you're towing a fine line. I'm not going to allow you to ask the jurors to stand in the shoes of the victim. But then the argument proceeded and these flagrant comments continued. In fact, after that sidebar discussion, and again, there was no admonition to the jury. After that discussion, the prosecutor continued and basically issued a third duty above and beyond what the court had already instructed the jurors as what their duty actually was. The prosecutor went on to say, I'm asking you to consider another duty and that is to not search for doubt, but seek the truth. Seek to protect other children as David Harper has asked you to do. So the concern that one might have is, what's to prevent a defense attorney from failing to object and then saying on appeal, aha, there were improper comments and therefore I get a new trial? If the defendant wins at trial, great for the defendant. If the defendant loses, he has in his back pocket this argument. Well, I think when the comments rise to the level that they do in this case, you're not just dealing with prosecutorial misconduct, you're dealing with ineffective assistance of counsel. There is precedent in this circuit. Hodge v. Hurley is a very helpful case. In that case, the counsel actually failed to object and this court found that because the comments were so over the top and disparaging of defense counsel and asking the jurors to consider fear of the defendant, despite that there was no objection, this court still reversed. So that's a very particular, particularly helpful case. Another helpful case precedent from this circuit is U.S. v. Sullivan. This is a particularly helpful case because if you look at what this court considered to be reversible error, the comments are actually more benign than we're dealing with here. That was a drug case and basically what the court, what the prosecutor said in that case was, you know, why don't you send a message that drugs don't belong in northern Kentucky, which is basically where the trial was taking place here in Cincinnati. And that was followed by a lengthy admonition to the jury by the court and this court still reversed on that basis. So that's another very helpful case. Another precedent from this circuit is Bates v. Bell. Very similar to this case, the jury was urged to think about future crimes that the defendant may commit and in doing so, obviously, assume the guilt of that defendant before the jurors had even considered the evidence, which is exactly what happened here. Now this court does have four factors that go into the flagrancy determination and I'm going to go through those factors, but first I would just note, the government concedes that these comments are improper. Really the only- They concede that all of them are improper. The government does concede that the trust and courage theme is improper. Right, but I don't think, you said all of them, I'm just telling you I don't think they did concede all of them were improper. You're correct. The comment about the duty to protect other children, they did not concede that. I think that the explanation given to that is not helpful at all. How about the one about seeking the truth? Pardon? How about the one about seeking the truth? I didn't think they conceded that was- No, they did not concede that either. I'm not sure I see how that's problematic. Well, your honor, if you look at how- It's pretty close to the key idea in a trial. Well, in this particular case, and when you consider the context and when you also consider the structure of the evidence in this case and the honor about jury instruction, the way that the prosecutor framed this, he said, I'm giving you an additional duty. Well, look back to what the previous duties were that the court said. Determine the facts, apply the law to the facts. Now the prosecutor is saying, here's an additional duty. Seek the truth, seek justice, and seek to protect other children in the future from this defendant. That's all that the victim is asking of you. In doing so, in positing the truth as separate than the facts, that's- They seem, I think to the average person, they seem synonymous. Well, in this case, your honor- Synonymous is finding the truth of what happened. Well, your honor, in this case, it's possible, it's entirely possible that the jury believed that abuse occurred at some point, but not on August 3rd. They may very well have believed that the truth was some sort of abuse occurred, but if it wasn't on August 3rd, as the government witnesses established that it could not have been, then it was not in Spencer, West Virginia. And if it was not in Spencer, West Virginia, the government's evidence fails. It seems to me that's just not the simplest way to look at what's going on in a case where you're supposed to find out what the real facts are when someone says, find the truth, seek the truth. I don't understand why both lawyers can't, in fact, shouldn't be saying that. That's the real point. I mean, you can't- I get your implication point, but I don't think that's an obvious one, and without some other evidence, there's just saying, who cares when it happened? Who cares whether he really hurt this kid? If he did this to anybody, we should punish him. That would be a different story, but there's nothing like that. Well, if you look at the totality of the context and the fact that this trust and courage theme was basically talked about 32 times, at least in the closing argument, trust. David Harper trusted Robert Pondle. David Harper's trust was betrayed. Now he's entrusting you, jurors, to have the same courage that he had to step forward and spill his life to strangers. He's urging you to have the same courage to convict Robert Pondle and protect future children. I don't want the court to get too caught up on this seek the truth and not search for doubt comment, because that's just a blip. There's the entire context that we're talking about, and this court's four factors for flagrancy, one of them is the strength of the evidence, and here, there is no strength of evidence. We have an extremely weak case put on by the government. We have objective evidence. We have objective documents and government witnesses establishing that August 3rd was not the correct date. We have this letter here. You say it's an extremely weak case. I guess I'm not so sure I see it that way. I mean, it seems pretty strong that the defendant admitted taking the boy out of state. You have the boy's evidence. You have the parent's evidence that he went out of state that time. You have someone at the church they visited checking a diary and saying, yes, he was there with the boy that service. It seems to me your key theory of doubt turns on this disparity between whether they left at night or in the evening, and that all seems to turn on whether this newsletter was accurate as to the time he gave this one talk. Well, your honor. It might not have been. It's a church newsletter. You do have Barbara Harper, who her importance in this case is second only to David Harper himself stating she probably attended that event. That event occurred at night on August 3rd. This is established in the record. We have a letter here saying we and other couples present enjoyed hearing you. That letter doesn't have the date, does it? It's dated August 1991, but it does refer to August 3rd, which could only be August 3rd, 1991. The letter says specifically August 3rd, doesn't it? Yes, it specifically says August 3rd. And it specifically- It says August 3rd is when the talk was given. Yes, and it talks in the past tense. It says- It says it was given in the evening. No, it does not state that. But the other objective documents in the record, which Barbara Harper affirmed, if you look in her testimony, she affirms defense exhibits 90, 91, and 92. And these are other church documents that establish the general timeframe for these community nights, which is starting in the evening around 7 to 8 o'clock and ending around 10 o'clock. Now, the government- What's the competing theory? What's the- The mom's just lying? I mean, the mom's just making this whole thing up? I mean, what's the competing theory? The competing theory is they're wrong about this weekend. And the reason that's so important as to whether this date, the reason why the on or about situation is so crucial in this case, and case determinative, actually, is because if August 3rd was not the right date, then it could not be Spencer, West Virginia. Because even the government admits, and it's not disputed, that Robert Pondle filled in in West Virginia, in Spencer, West Virginia, on one occasion. That was August 4th. So, if the transportation did not occur on August 3rd, then the location is not Spencer, West Virginia. And if the location- What would have prevented leaving, just leaving later than the mother thought that they left, and getting to West Virginia in the wee hours of the morning on the 4th? Well, Your Honor, there's no- The evidence in the record actually contradicts that. There are only three witnesses to speak to how and when Robert Pondle left with David Harper. May I finish? And that is during the daytime, before dinner, after lunch, it's sunny outside, in this blue-gray sedan. Now, if he were to have given the speech, which he has to have, this- I just urge you to look at this letter and look at the details of it that demonstrate that Barbara Harper was actually at this talk that occurred in the evening on August 3rd. There's no other transportation scenario given in evidence. At that point, it's all conjecture. Thank you. May it please the Court, Ben Glassman on behalf of the United States. Let me pick up right where that argument left off with Judge Batchelder's question, which actually occurred to me as I was listening to my colleague's argument. It does occur to me that there's actually- even if one grants that Mr. Pondle gave this talk at 7 or 8 p.m. on that evening, that actually doesn't contradict anything about the government's evidence. It certainly doesn't contradict the fact that Pondle was in Cincinnati on August 3rd and in West Virginia on August 4th, which is how the crime's alleged. It doesn't even contradict anything about the testimony of how Pondle came to the Harpers' home, say around 4.30, 5 or 6 o'clock that day, and picked up David Harper. But David and the mom do not say that David accompanied Pondle to the talk. Right. There's no substantive evidence whatsoever of the talk. There is no- Well, there's this letter that- You know, in listening to my colleague, one might think that this was the defense case or some kind of evidence that was introduced as the case in chief of the defendant. It was not. These exhibits, I refer the court to page ID 306, these exhibits were introduced solely for purposes of impeaching Barbara Harper. They were not introduced as substantive evidence. In fact, there was an objection the first time they were raised, and that objection's on 305. When you go to 306, that's a sidebar where the prosecutor explains that the prosecutor did not receive these exhibits ever, notwithstanding a request for reciprocal discovery. Defense counsel explains, I don't have to give them over because I'm not using them as my case in chief, I'm just using them for impeachment. And the district court says, oh, these are impeachment. But why they use what they use, and when they realize something was valuable, I'm not sure how that affects us. I mean, so, I guess one part of what you're saying and Judge Batchelor's saying, you know, they acknowledge getting there very late at night. That, too, is consistent with leaving after the talk. But you still have the problem of the mom saying they did leave while it was light. So, that part is inconsistent, isn't it? Not really, Judge. Go ahead. I mean, and this, and admittedly, this is something that I'm just picking up on the question during my colleague's argument. Because if you think about it, Pondell comes, the community night talk wasn't supposed to be at the Harper's home. It was at another location. It was supposed to be at the church, right? Right. So, Pondell comes to the Harper's home. I thought the mom said they left for West Virginia while it was still light. That seems inconsistent. I mean, that's a funny way to say they then went to the talk he gave and only then left for West Virginia when she was going to be there. I was thinking when her 10-year-old son is leaving. Well, that is, I think, when the 10-year-old's, the only testimony was that's when the 10-year-old son left the home with Pondell in Pondell's car. Now, perhaps, perhaps Pondell took them to the talk and then left after that and they just don't remember the talk, which was not a particularly newsworthy event. Unlike giving your son over to the priest to go out of state. I don't know. There was no questions about that at the trial. It just occurs to me that it just doesn't actually contradict. But even if it does, even if it did, as I say, these were, and as the court discussed with my colleague, there was testimony that, hey, you've got these documents, they're not necessarily reliable, nobody knows whether this talk actually took place on this day or not. And the jury was free to evaluate that as against the testimony of the eyewitnesses who testified to personal knowledge, their personal recollection of exactly what happened. So one concern that arises is whether this is an alibi defense on the part of the defendant here and whether that makes a difference in terms of this. How would you address that? Yeah. I don't think it's an alibi, but let me come back to that. First, let's say, even if it is an alibi, this court's en banc decision in Nuroth explains that the failure to give an honor about instruction when there is an alibi can be harmless, and it gives you a couple of factors. If you look at those factors in this case, as discussed in our brief, they all point to this error being harmless, because we're talking about a single trip. There was no confusion, no room for doubt. The witnesses said one time, the prosecutor said one time. And as Judge Sutton discussed with my colleague, the evidence of guilt was strong, and the evidence for this supposed alibi was relatively weak, resting solely on these documents, which were used for impeachment, and that witnesses testified were not reliable records of what they purported to report. Why should an honor about, I know I'm taking you, weaving around all the different arguments, but why should an honor about instruction be proper here, given that the government's case was entirely, it was August 3rd to 4th, and nobody seemed to be going in any other direction? You know, the only possible answer as to a propriety on that point that I would offer is that I suppose one doesn't know, based on the testimony, whether they crossed interstate on August 3rd or August 4th. But other than that, I would say that it's not a big deal. And in fact, if there had been an objection, I'm sure the government would have just said, whatever, we don't need that. But there was no objection. So we're looking at a plain error standard. And that's why I say that even if there were an objection, it would be harmless. So certainly it doesn't affect the defendant's substantial rights. Now, backing up as to whether or not there actually was an alibi, the government doesn't think so. An alibi is a defense that makes the crime as alleged a physical impossibility. And that's not this. An alibi would be if someone came in and testified, Father Pondell was in Israel in all of August 1991. He couldn't have committed, as he was earlier in the year, he couldn't have committed this crime. Or I was with Father Pondell on August 3rd and August 4th in our mission in Cincinnati. He never went to West Virginia. That would be an alibi. But it's not an alibi to say that, well, yes, I was in the place where the crime is alleged to have committed at the time and on the dates that the crime was alleged to have been committed. But you shouldn't believe the government's witnesses who testified about the manner of my commission of the crime, because that doesn't square with some documents I have about my timing on one of those evenings. That's not an alibi. But would it be an alibi if there were witnesses who said they had attended his speech in Cincinnati that evening from 7 until 10 PM? No. That would not be an alibi itself. I don't think so. An alibi would have to be something that made the crime, as alleged, physically impossible. And that sort of evidence would not. That's just better evidence, stronger evidence of the supposed alibi. And I might add, of course, that this was never thought of as an alibi at the trial level. There was no request for an alibi instruction. The first time the word alibi has been used is on appeal. So I don't think anybody- How about the prosecutorial comments? Yes. We started where we were ending with a friend on the other side, but she did spend a fair bit of time on that. So you would acknowledge in your brief that some of the courage comments probably did exceed what the prosecutor should have said in closing. So the only one that makes, the only allegation of misconduct by the defendant appellant here that makes me uncomfortable is the courage comment. But it's not courage comments, it's two lines on one page of this closing argument which says- And she says there are 30 or so statements in closing. She's talking about all the different prosecutorial statements that she thinks are improper. I'll let her answer on rebuttal, but my understanding is that she's referring to use of the word trust. And the claim on appeal is that the prosecutor used this trust theme throughout closing argument. And my response to that is that there's nothing improper about having a theme at closing argument and nothing improper about a theme of trust that the defendant acquired the victim's trust, betrayed it. And that the victim who testified was trusting the trial and trusting the jury with his life. That part's not improper, so I don't think that the reference to 30 references to trust is itself a problem. I wish the prosecutor would not have said that David Harper would ask the jury to show the same courage. Cuz that seems close to asking the jury to walk in the victim's shoes or to identify with the victim. I couldn't find a case that specifically disfavors that comment. So certainly there are cases that say that a prosecutor may permissibly call for justice in the closing argument and may connect justice to the victim so that it is permissible. Had the prosecutor, instead of asking the jury to show the same courage, had just asked the jury to, with their verdict, give justice to David Harper. That's fine. This court has said so. So it's certainly not an egregious impropriety if there is impropriety in that statement. And that's the only one that makes me uncomfortable. What about the protect other children from the defendant? Right, so if you read the transcript, the way it comes across is it says that you seek truth in the collective memories of strangers and the victim, comma, seeking only justice and to protect other victims. That's a reference to the victim, what the victim was seeking in his testimony. The victim testified, David Harper testified, and this was an issue at trial, was his credibility. And he testified that part of what was elicited both on direct examination and across of him was that he was not seeking money, he had not filed a civil lawsuit. And the only reason that he had come forward after all this time was that he felt a lot of guilt and wanted to see justice and felt guilt because he was afraid that Pondle could be doing this to other kids. That was his motivation. It is not improper for the prosecutor to argue that the jury should find a witness credible based on the witness's own statement of his motivation. Was that alleged or stated motivation attacked by the defense? The, yet, well, the defense attacked every aspect of the witness's credibility. I mean, at length and almost bizarrely so, attacking him as a drug user, a liar, that he lied about things as small as what his assistant coaches in high school thought of his football playing ability, to lying about committing felonies while on the job. So, I think that the attack on the credibility of the witness was pretty thorough. I did want to make, yes, Judge Moore. In terms of going through the comments, there were also some golden rule arguments that the jury was asked to put themselves in David Harper's position as a ten-year-old boy. Right. Were there not violations of the quote golden rule? So that, I think you're referring to, there was one comment in describing how David Harper's life spiraled out of control after the events. And then I think the prosecutor said something like, you know, you be that ten-year-old boy. Now again, this is plain error review. So I think what the prosecutor was trying to do there was not to say, jury, convict because this could have been you. That would clearly be improper. I think what the prosecutor was saying here was, the more artful way to have put it, would have been to say, he's testified to this, this, and this. Yes, he used drugs. Yes, he did this and this. But isn't that consistent with his experiences? Isn't that what you'd expect a ten-year-old boy to do? So he was again arguing that the jury should find that witness credible. And so perhaps it was not artfully phrased, but I don't think that it was egregiously improper. And I did want to take issue with one point that my colleague made. And perhaps I'm wrong on this. The record will speak for itself. But as she was arguing in answer to Judge Moore's question about whether there was an objection to any of these alleged improprieties, she said, yes, I don't think there was. I looked through, just sitting at council table, the opening portion of closing argument. And I did see two objections by defense counsel. They were objections to, the prosecutor was saying that the jury had not heard anyone testify that they attended this talk on August 3rd. And the defense attorney objected that the prosecutor could not permissibly talk about evidence that the defendant had not put on. Now, I think that objection actually was wrong. But that's the only objection that I saw in that closing argument. There was no objection to any of the alleged improprieties that are alleged on appeal. And I do think that that goes to show that if there are two ways to read the prosecutor's comments, one, a proper argument about whether you should find the witness credible, and an improper one about that the jury should convict in order to protect other kids and not based on the evidence. It suggests that, at least on plain error review, the one that I'm suggesting is the better interpretation. Because it certainly wasn't obvious enough to anyone, court, counsel, anyone, to raise an objection. So in the government's view, any misconduct here does not rise to the level of plain error. And unless there are further questions, the United States asks the court to affirm. Thank you, counsel. Rebuttal? Just very quickly on the closing argument point. And again, the record shows this. But I just wanted to clarify, the statements about protecting other children are not just what counsel said. The prosecutor said, he told you he wanted justice and to protect other children from that man right there, Robert Pondle. That's all he's asking of you, very simple. So he did make this a personal statement about protecting other children. Now, on the points about the evidence, the key to this case is Barbara Harper admitted that the date was wrong. In her testimony between, this is page ID 344, but between 341 and 345, she admits August 3rd is not the correct date. And when you know that August 3rd is not the correct date- But didn't she say that in the context of if the defendant's evidence is correct, then August 3rd isn't the right date? She did state that. And then if you look at the letter, which she affirmed and adopted, it says, we and other couples present. Now, the government's explanation for this fails at every turn. The government tries to say, she wrote this letter in advance. Well, that doesn't make any sense. It's illogical because the letter includes details about the speech, details about what he talked about. The government tries to say that the event was canceled. Well, that doesn't make any sense because, again, we have this letter talking about actual details of the event. We have Barbara Harper- This incident happened a very long time ago. I mean, in one sense, that helps you. Because if I'm a juror and I'm trying to find beyond a reasonable doubt, I'm saying, gosh, that's a really long time. I'm very nervous about these recollections and whether anyone can remember this kind of thing. But it also helps on this point because this is the kind of thing one might forget a couple decades later, whether someone really did leave in the afternoon or when you said left in the afternoon, you're referring going to somewhere else before you left, right? I mean, that's all we're talking about, that differential. Luckily, we do have these documents. And all we can go on is the testimony that's in the record. We can't lessen the burden of proof. But the documents don't contradict the point I was just making. Well, what contradicts- Everyone agrees they got there very late at night. Everything about the next morning suggests they had not gotten much sleep. What contradicts the point, though, is that the only evidence in the record as to when and how they left Cincinnati for West Virginia is contradicted by the speech taking place in Cincinnati. Why couldn't the defendant have picked up the boy at his house during the day before dinner and then have gone to the church and done the meeting at the church where the mom says she was present in this letter and then the defendant have taken the boy to West Virginia? It doesn't technically conflict. It is different from what we might infer the mom said or meant when she said he was picked up at my house before dinner during the daylight and they left for West Virginia. But it doesn't explicitly conflict. There's just no evidence speaking to that, Your Honor. You know, Barbara Harper, you would think she would have- Just call it a contradiction. Imagine it this way. The testimony is it was a sunny day when they left and excellent defense counsel proves it rained the whole day in Cincinnati. So that dramatically, not maybe even dramatically, undermines the credibility of the person who then said these other things. But it doesn't disprove the theory. It just proves they either misremembered this, right? They just got that memory wrong after a couple decades or it's evidence everything else they were saying wasn't true. But that's all it does. And this seems to me very similar. A very additional telling point is if you look on page 342, page ID 342, when Barbara Harper admits that the date was wrong, she says that she was only stating- If what you're saying- Okay, keep going. Okay, sorry. She says that she only came to that date after learning what Sergeant Swigert found out. And that makes it pretty telling that what happened here is that the government and investigators are trying to reconstruct events that happened decades ago. It was discovered that Pondle was in Spencer, West Virginia on August 4th. And so they backed into this date. But then lo and behold, it turns out Robert Pondle was in Cincinnati hours after he would have had to leave. Why isn't this all a jury question? Because, and it's getting back to the point that your opponent made, which is that there's not a flat conflict. It's inferences that are being drawn that the mom's statement meant that the boy was taken immediately to West Virginia, as opposed to the possibility that there could be some consistency here,  sat around while this session went on. And then the boy and the defendant left for West Virginia. Well, we submit that the government can't have it both ways. I mean, there's no evidence to that in the record. The government trying to get around this record and Barbara Harper's testimony basically tried to state- You please finish. I shouldn't interrupt you. The government tried to state that this event was just flat out canceled. That was the government's explanation. The government can't have it both ways here. There's absolutely no evidence in the record other than this one transportation scenario that was given. So the government didn't make the argument at trial that I was making as a possible scenario as to what happened. The government never argued that. And therefore, you're saying the jury couldn't consider that as a possibility? I really don't think that they could have. And if they did, it would have been an illogical and unreasonable leap to that conclusion because there's no evidence to it. And from Barbara Harper's testimony, it's pretty clear that she was stating that her child left with Robert Pondle and they went to West Virginia. They went out of state. That's how the evidence actually played out. Thank you, counsel. The case will be submitted. Clerk may call the next case.